# Morgan Lewis

**Zane David Memeger**
Partner
+1.215.963.5750
zane.memeger@morganlewis.com

January 6, 2023

Hon. Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *D.J.C.V., et al. v. United States of America*, No. 20-cv-5757 (PAE)

Dear Judge Engelmayer:

Plaintiffs respectfully submit this letter to address a discovery dispute that has arisen between the parties. After over two months of discussions, the government has refused to make national policy witnesses available to testify at depositions in this case without the Court's intervention.[1] Plaintiffs have noticed a deposition pursuant to Fed. R. Civ. Pro. 30(b)(6) and the depositions of two Department of Homeland Security (DHS) officials with information regarding national family separation policy and the use of a parent's prior "criminal history" as a pretext to separate family units. The notices are attached hereto as Exhibits A, B, and C, respectively. Plaintiffs are entitled to explore these areas, which are at the core of the jurisdictional questions addressed in the Court's June 3, 2022 Opinion & Order. ECF No. 127.

The government's position is that *all* national-level depositions are outside the scope of jurisdictional discovery. Its proposed compromise from this unsupported position is untenable. Government counsel has offered to allow the deposition of one national witness, Deputy Chief of Law Enforcement Operations for U.S. Border Patrol Matthew Roggow, conditioned upon Plaintiff's abandoning their notices of Fmr. Executive Director/Policy Directorate for U.S. Border Patrol, Meghann Peterlin and 30(b)(6) witness. Each deposition Plaintiffs seek to conduct is not only within the scope of the Court's order, but also is highly relevant to Plaintiffs' well-pleaded allegations that their separation in May 2018 was due to the punitive family separation policy developed and ordered at the national level. The government cannot hold the discovery process hostage because its clients are unwilling to discuss these issues under oath.

**A.  The Court Ordered Jurisdictional Discovery to Permit Plaintiffs an Opportunity to Test Defendant's Assertion Regarding the Reason for the Separation.**

In its June 3, 2022 Opinion & Order, this Court found that it was "not certain whether G.C. and D.J.C.V. were separated pursuant to the Zero Tolerance policy or as a result of G.C.'s criminal history" and, therefore, jurisdictional discovery was required to "test the truth of these facts and discern the reason

---

[1] The government has agreed to allow the depositions of two line agents who dealt with the Plaintiffs when they came to the United States and provided Plaintiffs with a copy of the deposition transcript of Brian Hastings, Chief Law Enforcement Operations Directorate (the "Hastings Transcript"), in *A.P.F. et al. v. United States of America*, Case No. CV-20-00065-PHX-SRB (D. AZ), subject to Plaintiffs agreeing to the submission of 15 written questions to be answered by Hastings with no additional deposition testimony being sought by Plaintiffs.

Hon. Paul A. Engelmayer
January 6, 2023
Page 2

for G.C.'s initial separation from D.J.C.V." ECF No. 127 at 21, 48. The Court's order was clear: jurisdictional discovery would examine "whether the Zero Tolerance Policy *played no part* in the decision to separate G.C. and D.J.C.V." and that the Court would have jurisdiction "if the Zero Tolerance policy *drove* the separation of G.C. and D.J.C.V." ECF No. 127 at 27, 48 n.20 (emphasis added). The government would have Plaintiffs answer that question by accepting the testimony of two line agents, neither of whom were involved in the development or implementation of the Zero Tolerance Policy, let alone the prior "criminal history" piece. The depositions of a small number of witnesses with high-level policy information are essential to resolving the jurisdictional question.

    B. **Deputy Chief Roggow and Policy Directorate Peterlin Have Personal and Specific Knowledge about the Zero Tolerance and Family Separation Policies and the use of Prior "Criminal History" as a Pretext for Family Separation**

Deputy Chief Roggow played a key role in the development of the family separation policy, specifically, the use of prior "criminal history" as a pretext to separate families *before* implementation of the Zero Tolerance Policy of prosecutions at the border. Email communications show that he served as a liaison between headquarters and the Border Patrol sectors. In this liaison role, Mr. Roggow gathered data from the field regarding family separation and "criminal history" before Zero Tolerance was officially announced. In February 2018, two months before Plaintiffs were separated, Mr. Roggow asked each sector to provide their family separation policy and "data to support the narrative that *criminals are not shielded because they cross as a family unit*." CD-US-0052620, attached as Exhibit D (emphasis added). Mr. Roggow shared the data with DHS officials who developed the formal family separation policy.

Mr. Roggow and Ms. Peterlin also distilled information in support of the government's messaging to support family separations, helping to draft a U.S. Customs & Border Patrol (CBP) "Immigration and Border Security Briefing" in December 2017. CD-US-0040116, attached as Exhibit E. This document and embedded internal comments demonstrate that Mr. Roggow and Ms. Peterlin were intimately involved in efforts to connect the prosecution and resulting separation of immigrant parents to parents' criminal records. Ms. Peterlin was also involved in drafting a "family separation statement" around December 2017, just after a pilot family separation program ended and just before the nationwide family separation policy was officially implemented. CD-US-0056764, attached as Exhibit F. The draft talking points demonstrate that she helped develop messaging connecting the family separation policy to parents' criminal histories.

In short, Ms. Peterlin is uniquely qualified to share her firsthand knowledge of the extent to which prior criminal history factored into family separation policy prior to the official announcement of Zero Tolerance and the extent to which there were multiple separation policies operating simultaneously. Mr. Roggow, on the other hand, has direct knowledge of how these policies were implemented on the ground and the extent to which field agents cooperated with the oft-changing national policies.

    C. **Plaintiffs Cannot Test Defendant's Assertion Regarding the Reason for Separation Without Deposing a 30(b)(6) Witness.**

The question of whether G.C. and D.J.C.V. were separated due to a national policy to deter immigration at the southern border through the practice of separating families is inextricably intertwined with national policy. Plaintiffs must be able to examine what policies existed, where they came from, why they were implemented and when. Plaintiffs noticed a Rule 30(b)(6) deposition to ask precisely those questions. In review of thousands of documents produced by the government, Plaintiffs have not located, and the government has not identified, *any written policy requiring* the separation of families where the adult has any "criminal history." To the contrary, there is significant written evidence indicating that prior to the development and implementation of the national family separation policy, agents were directed *not*

*to separate parents from very young children* in all but exceptional cases.[2] It is thus necessary to depose a witness with knowledge of what family separation policies, if any, were in place and enforced prior to the implementation of Zero Tolerance.

The topics outlined in Plaintiffs' original 30(b)(6) notice are limited and targeted to the jurisdictional question. The government's position appears to be that the topics are covered by the previously referenced Hasting transcript. A review of that transcript reveals, however, that it does not adequately cover all the topics outlined in the notice. Having reviewed the Hasting transcript, Plaintiffs offered to work with Defendants to identify an appropriate 30(b)(6) witness, possibly Mr. Roggow, and indicated willingness to narrow the scope to the following two topics:

1. Policies and practices in effect in 2016, 2017, and 2018 related to the age of the child, specifically children under age 5, in the context of family separation for any reason, including policies and practices to coordinate with ORR regarding placement and custody and communications with DHS, CBP, ICE, ORR, and DOJ employees and agents regarding implementation, including in the El Paso pilot program, the Rio Grande Valley sector, and other border offices.

2. Development and implementation of the DOJ's Zero Tolerance Policy, and DOJ coordination with DHS, CBP, ICE, and ORR related to the Zero Tolerance Policy, specifically, communications among DOJ, DHS, CBP, ICE and ORR employees and agents regarding implementation.

Despite Plaintiffs' willingness to compromise on the 30(b)(6) topics, the government continues to take the untenable position that Mr. Roggow can be deposed only if Plaintiffs drop entirely their requests to depose a 30(b)(6) witness and Ms. Peterlin.

**D. Conclusion**

Plaintiffs respectfully request that the Court order the government to comply with Plaintiffs' notices to depose Mr. Roggow, Ms. Peterlin and a 30(b)(6) witness. These depositions are essential for ascertaining what policies were in place in May 2018, the purposes of those policies, how they were disseminated to the various border sectors, and which policies resulted in the separation of G.C. from his 19-month-old child. The Court must reject Defendants' efforts to improperly limit Plaintiffs' access to discovery.

Respectfully submitted,

Zane David Memeger

Enclosures

cc: All counsel (via ECF)

---

[2] *See, e.g.*, CD-US-0025384, attached as Exhibit G (explaining that "[o]nly children who are 5 years of age or older will be turned over to the Office of Refugee Resettlement" and described that as one of a few "limiting factors that would prevent prosecution . . ."); CD-US-00011689A, attached as Exhibit H (memo from United States Attorney for the Southern District of Texas, Ryan K. Patrick, describing adults with a child under 5 as "not typically 'impactable/prosecutable.'"); CD-US-0084386, attached as Exhibit I (email from Chief Hastings suggesting that 100% prosecution applied to "all amenable adults that did not have tender age children.").