UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| D.J.C.V., minor child, and G.C., his father,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES of AMERICA,<br><br>Defendant. | No. 1:20-cv-05747 (PAE)<br><br>**JOINT STATEMENT OF UNDISPUTED FACTS** |

Pursuant to the Court's Order dated April 10, 2023 (Dkt. 170), the parties in the above-captioned matter, through their undersigned counsel, respectfully submit the following joint statement of undisputed facts. The facts set forth herein are agreed to for all purposes in this action. The parties acknowledge that because there are additional facts that are not included herein, this joint statement is not to be construed as a complete recitation of all the facts relevant to this action.

**I.   G.C.'s Immigration History**

1. At some time prior to October 28, 2010, G.C. entered the United States without inspection or admission.

2. On October 28, 2010, G.C. pleaded guilty to one misdemeanor charge of Aggravated Assault, La. Stat. Ann. § 14:37, in LaFourche Parish, Louisiana. He was sentenced to and served 48 days in jail.

3. On December 9, 2010, an immigration judge ordered Plaintiff G.C. removed from the United States. On January 3, 2011, a Warrant of Removal was issued for G.C., and on January 14, 2011, G.C. was removed from the United States.

1

4. On October 2, 2013, G.C. re-entered the United States between ports of entry without inspection or admission.

5. G.C.'s order of removal was reinstated on October 5, 2013, and G.C. was removed from the United States for a second time.

## II. Arrival and Separation of G.C. and D.J.C.V. in 2018

6. On April 30, 2018, at approximately 11:30 PM, G.C., then a 37-year-old Honduran man, and his son D.J.C.V., then nineteen months old, were encountered by a U.S. Border Patrol ("USBP") Agent near Hidalgo, Texas. They had entered the United States between ports of entry without admission, inspection, or parole. They were arrested and taken to the Central Processing Center ("CPC") in McAllen, Texas, within the Rio Grande Valley ("RGV") sector of U.S. Customs and Border Protection ("CBP").

7. G.C. and D.J.C.V. were booked into the RGV CPC in McAllen, Texas, on May 1, 2018, at approximately 4:30 AM.

8. Agents at the RGV CPC fingerprinted G.C. and performed a search through their records system of G.C.'s encounters with law enforcement. The records review revealed the 2010 misdemeanor conviction in Louisiana for Aggravated Assault, for which G.C. had served 48 days in a parish jail.

9. On May 1, 2018, at 9:31 AM, Border Patrol Agent ("BPA") Johnny Cavazos, stationed in the RGV CPC, sent an email to his supervisors in reference to G.C. and D.J.C.V. The subject line of the email was "FMU Separation Request." The email stated, "Request separation ███ ███████████ due to mother [sic] having prior criminal history," and it referenced G.C.'s 2010 aggravated assault conviction and sentence.

10. The letters "FMU" and "FMUA" are U.S. Border Patrol's acronyms for "family unit."

2

11. At the time of his deposition, BPA Cavazos did not recall whether he had requested to separate a family unit with a child under the age of 1 prior to May 1, 2018.

12. On May 1, 2018, at 10:16 AM, RGV Watch Commander Gerardo Guerra, one of BPA Cavazos' supervisors, forwarded the separation request for G.C. and D.J.C.V. to RGV Deputy Patrol Agent-in-Charge ▬▬▬▬▬, asking for "guidance on family separation approvals."

13. Deputy Patrol Agent-in Charge ▬▬▬▬▬ replied at 3:28 PM that day in an email stating: "If the Adult parent is amicable [sic] to prosecutions due to criminal history or fraudulent documents then we would prosecute the adult and separate the family for the welfare of the child. An FOJC [Field Office Juvenile Coordinator] notification would need to be done for the child."

14. On May 1, 2018, at 3:35 PM, Watch Commander Guerra replied to BPA Cavazos approving the separation. His e-mail read: "Approved. Please make the necessary changes on e3 and have someone make the FOJC notification. Prosecute the adult subject."

15. The term "e3" refers to "the software program that is the official record for [CBP's] detention and processing for all detainees in border patrol custody."

16. On May 1, 2018, USBP referred G.C. for criminal prosecution under 8 U.S.C. § 1325 (entry without inspection).

17. Also on May 1, 2018, USBP issued to G.C. a Notice of Intent/Decision to Reinstate Prior Order, and reinstated G.C.'s prior order of removal under 8 U.S.C. § 1231(a)(5).

18. Once the determination was made to refer G.C. for prosecution, USBP officials designated D.J.C.V. as an unaccompanied minor ("UAC"). They referred D.J.C.V. for placement in the custody of the Office of Refugee Resettlement ("ORR"), the component of the U.S. Department of Health and Human Services responsible for the care and custody of UACs.

19. The term "unaccompanied alien child" means "a child who—(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom – (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

20. On May 1, 2018, at approximately 12:10 PM, USBP made a telephone call to D.J.C.V.'s Aunt, ███████████████, who resided in the United States.

21. On May 1, 2018, at approximately 8:42 PM, USBP received an ORR placement for D.J.C.V. with Lutheran Social Services of New York ("LSS New York").

22. A note in ████████████████████████████████ dated May 1, 2018, at 9:30 PM, states that the United States Attorney's Office for the Southern District of Texas declined to prosecute G.C.  Specifically, it states: "Prosecutions [*sic*] was declined on subject due to a full docket for the next presentation in court. Subject will not meet the 48-hour rule for the next day's docket."

23. On May 2, 2018, at approximately 10:53 AM, D.J.C.V. was "booked out" of the RGV CPC to be placed with LSS New York.

24. D.J.C.V. was received into ORR custody at LSS New York on May 2, 2018.

25. On May 3, 2018, at 2:36 AM, G.C. was permanently "booked out" of the RGV CPC.  He was transferred to the South Texas Processing Center, in the custody of U.S. Immigration and Customs Enforcement ("ICE").

### III.   G.C.'s Immigration Detention and Reunification With D.J.C.V.

26. D.J.C.V. remained in the custody of ORR from May 2, 2018, through October 15, 2018.  He was housed in three separate foster homes during that period of time.

27. G.C. was transferred to several additional facilities within ICE custody and remained in ICE custody until October 10, 2018, when he was released on bond from the Orange County Detention Center in Orange County, New York.

28. On August 23, 2018, U.S. Citizenship and Immigration Services ("USCIS") gave G.C. a reasonable fear interview. As a result of the August 23, 2018, reasonable fear interview, USCIS determined that G.C. had a reasonable fear of returning to Honduras.

29. Later on August 23, 2018, G.C. was served with a Notice of Referral to an Immigration Judge and placed in proceedings for withholding of removal.

30. On September 10, 2018, the Department of Homeland Security ("DHS") issued a Notice of Custody Determination determining that G.C. would remain detained by DHS pending a final administrative determination in his immigration case.

31. On October 4, 2018, G.C. and D.J.C.V. filed a habeas corpus petition in the federal district court for the Southern District of New York seeking court-ordered reunification. *D.J.C.V. et al. v. ICE et al.,* 18-cv-9115 (AKH) (S.D.N.Y.), ECF No. 1.

32. On October 5, 2018, G.C. received a bond hearing before an immigration judge. The immigration judge ordered that G.C. be released from detention on a $2000 bond. *See* Declaration of Carolyn Silane, *D.J.C.V. et al. v. ICE et al.,* ECF. No. 19 at 3, ¶ 10.

33. On October 10, 2018, G.C. posted bond and was released from ICE custody.

34. On October 15, 2018, Judge Alvin Hellerstein of the Southern District of New York ordered the immediate release of D.J.C.V. from ORR custody to his father. *D.J.C.V., et al. v. ICE, et al.*, ECF Nos. 1-5. Judge Hellerstein's order noted that "the government does not allege that Petitioner Mr. [G.] C. is unwilling or unfit to care for Petitioner D.J.V.C., his child, or any other adequate reason why petitioners should not be reunited." ECF No. 21.

35. D.J.C.V. was released into the custody of his father on the evening of October 15, 2018.

IV. **Government Treatment of Family Units Apprehended at the Southwest Border**

    a. **Background**

36. In 1997, a settlement agreement in the case *Flores v. Sessions*, No. 85 Civ. 4533 (C.D. Cal.) (ECF No. 101) (the "*Flores* Settlement Agreement"), was approved by the court. As a result, and continuing in 2018, there are limitations on the length of time DHS can detain minors, including in a family residential center. *See Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016).

37. In October 2015, CBP issued guidance titled "National Standards on Transport, Escort, Detention and Search" known as the "TEDS Policy."

38. Pursuant to the TEDS Policy, CBP should "maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation." "When it is necessary to separate juveniles from the parent(s) and/or legal guardian(s), officers/agents must follow legal requirements and their operational office's policies and procedures."

39. Brian Hastings, Chief of CBP's Law Enforcement Operations Directive, testified at a deposition that all sectors were to follow the guidance of the TEDS Policy and absent a determination that separation was required, "under TEDS, we tried to keep individuals together in the Border Patrol facility." This was the case both "before 2018 and after 2018."

40. USBP is subject to the requirement under the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA") that a UAC must be placed with ORR within 72 hours of determining that the child is a UAC.

41. USBP does not have any long-term immigration detention facilities.

42. USBP does not have authority over ICE custody determinations.

43. ICE does not have authority over USBP prosecution referrals.

44. The U.S. Attorney's Office, not USBP or any other DHS component, makes the decision whether to prosecute an individual, and the USAO may decline a prosecution that has been referred by USBP.

   b. **2017**

45. On April 11, 2017, a memorandum (the "April 11 Memorandum") issued by former Attorney General Jefferson Sessions directed all federal prosecutors to renew their commitment to criminal immigration enforcement. This included a "focus on criminal cases that will further reduce illegality."

46. On July 6, 2017, the Acting United States Attorney for the District of New Mexico "removed all restrictions imposed" for El Paso sector prosecutions of misdemeanor and felony immigration offenses (8 U.S.C. § 1325 and 8 U.S.C. § 1326) (the "El Paso Prosecution Initiative").

47. ███████████████████████████████████████████████████████████████

48. ███████████████████████████████████████████████████ the Western District of

Texas and District of New Mexico were prosecuting "all amenable adults who entered as part of a family unit" whereas "[p]rior to this agreement, FMUA separation was limited due to the fact that parents were required to have prior criminal and/or immigration history before separation was approved" in order to prosecute the parent. The ███████████ ███████ that the "combined actions above allow the Border Patrol to apply the most appropriate post-arrest consequence to an individual to break the smuggling cycle and end their desire to attempt further illegal entry."

49. On November 18, 2017, ███████ emailed Chief ███████ directing him to "stand down on the continuation of the [El Paso sector] prosecutions program until USBP – HQ leadership has had an opportunity to review all aspects of this program and brief up the chain at the appropriate level."

50. ████████████████████████████████████ "[a]s of November 18, 2017, El Paso Sector is **No** longer executing prosecutions" as part of the El Paso Prosecution Initiative and that "[n]o other USBP sectors are engaged in similar operations at this time."

   c. **January – March 2018**

51. On February 22, 2018, Associate Chief of Border Patrol Matthew Roggow, based in CBP headquarters in Washington D.C., sent an email to the sectors requesting data "█████████████████████████████████████████████████████████████"

52. On February 26, 2018, Associate Chief HQ-Operations-West Division ███████ replied to Associate Chief Roggow with compiled responses to Deputy Chief Roggow's request for information. Mr. ███████ replied that it was "RGV's standard procedure not to separate family units in order to prosecute the head of household; however, RGV [did] separate family units

for the following reasons: Subject has criminal history and meets the established Prosecutorial guidelines. . .”

53. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ USBP ▮▮▮▮▮ "does not have a blanket policy that dictates family separation and the decision to separate is made on a case-by-case basis." ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "there are numerous situations that would require the separation of family units. Examples are: the parent/legal guardian is amenable to prosecution; evidence of abuse that would indicate that the child's safety is at risk; questionable familial relationships; insufficient detention space to accommodate a family unit where both parents are present."

54. An email chain dated March 12-13, 2018, containing the subject heading: "Stats – Separating Families," was circulated between Chad Wolf, then-Chief of Staff to the Secretary of Homeland Security, and three ICE officials, discussing family separations by ICE. In that chain, on March 12, 2018, Chief of Staff Wolf stated that "regarding the number of separated families," ICE did "not have the data due [*sic*] the few instances where this occurs." ▮▮▮▮▮ ▮▮▮▮, then the Chief of Staff to the Acting ICE Director, responded that in Fiscal Year 2017, out of approximately 75,000 families referred from DHS to ICE, "ICE separated people in about ten FAMUs."

55. On March 15, 2018, Associate Chief Roggow wrote in an email to Chief Brian Hastings that El Paso Sector Chief Hull "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" The email did not discuss RGV specifically.

56. In an email chain on March 12 and 13, 2018, USBP staff discussed making modifications to the e3 software system.

9

      **d. April 2018 Forward**

57. On April 6, 2018, former AG Sessions issued a memorandum (the "Zero Tolerance Memorandum") directing "each United States Attorney's Office along the Southwest Border—to the extent practicable, and in consultation with DHS—to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." The Zero Tolerance Memorandum was directed to the Department of Justice and not DHS or any of its component agencies.

58. Also on April 6, 2018, former President Trump issued a memorandum titled "Ending 'Catch and Release' at the Border of the United States and Directing Other Enhancements to Immigration Enforcement," that directed DHS, in coordination with the Secretary of Defense, Attorney General, and Secretary of HHS, to submit a report to the President within 45 days detailing all measures that their respective departments have pursued or are pursuing to expeditiously end 'catch and release' practices. This memorandum did not discuss or address treatment of family units.

59. On April 19, 2018, e3 was updated to be able to track family separations.

60. In a memorandum dated April 23, 2018, titled "Increasing Prosecutions of Immigration Violations" ("Increasing Prosecutions Memorandum"), the Commissioner of CBP, the Director of ICE, and the Director of USCIS proposed three prosecution referral policy options to the Secretary of Homeland Security. This memorandum recommended that ███████████ ████████████████████████████████████████████████████████ ████████████████████.

10

61. On April 27, 2018, Associate Chief Matthew Roggow sent an e-mail to the Southwest Border chiefs and deputies instructing them to "[p]lease begin referring all single adults to your respective U.S. Attorney's Office for prosecution under section 1325(a) of Title 8."

62. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ "our action of referring all amenable cases is new."

63. On May 4, 2018, former Secretary of Homeland Security Kirstjen Nielsen approved Option 3 in the Increasing Prosecutions Memorandum, which directed DHS to refer all amenable adults for prosecution of immigration violations, including those presenting as part of a FMUA ("Referral Policy"). The Referral Policy directed DHS to "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉"

64. On May 4, 2018, following the issuance of the Referral Policy, Chief Hastings sent an email to the USBP field chiefs and deputy field chiefs, among others, directing them to "implement increased Southwest Border Prosecutions . . . **effective May 5, 2018**." The email attached an approved concept of operations ("CONOP") "to develop a quickly scalable approach to achieve 100% immigration violation prosecution referrals for **all amenable adults**" and he asked each of the nine Southwest Border Sectors to create an individualized CONOP by May 7, 2018.

65. USBP was not authorized to implement the Referral Policy until May 5, 2018.

66. The approved CONOP attached to Chief Hastings's May 4, 2018, email was dated May 3, 2018, and stated that the "southwest border sectors, under the direction of their Chief Patrol

11

Agents (CPAs), will implement phased prosecutorial priorities to achieve an end state of 100% prosecution of all amenable aliens on a phased timeline consistent with DOJ partners' capacity."

67. The May 3, 2018, CONOP stated: "[a]ll appropriate humanitarian considerations and policies remain in place. Discretion on appropriate referrals for sensitive cases, including but not limited to adults who are traveling with tender age children, remains with the CPAs or their designees within their command staffs."

68. In the RGV sector, Watch Commander Guerra orally communicated the change in prosecution referrals to his supervisees, which included Border Patrol Agents responsible for processing migrants in USBP custody.

69. Prior to May 5, 2018, RGV Sector referred approximately ▓ single adults per day for prosecution of Section 1325 violations ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓.

70. On May 6, 2018, Assistant Chief Patrol Agent Monique Grame sent an email to ▓▓▓ ▓▓▓ and ▓▓▓▓▓ attaching a CONOP for the RGV Sector to implement the Referral Policy. On May 7, 2018, Assistant Chief Patrol Agent Grame sent another email to Ms. ▓▓▓ and Mr. ▓▓▓ stating that she "mistakenly sent the wrong version" of the RGV CONOP the prior day, and attached the correct version.

71. Also on May 7, 2018, USBP Acting Chief Carla Provost issued a memorandum to the Chief Patrol Agents and Directorate Chiefs regarding "modifications to the recording information process within the e3 system" to ensure "accurate reporting of reasons for a Family Unit (FMUA) Separation." While noting that "USBP maintains family unity of detainees to the greatest extent operationally feasible . . . there are several instances where temporary FMUA

12

separation (while in USBP custody) and complete dissolution must be documented within e3." The memorandum attached a PowerPoint providing "guidance on how to a create an FMUA and how to document a temporary or permanent FMUA separation" in the e3 system.

72. Because 100% prosecution referrals were not immediately achievable in RGV Sector due to resource limitations, ███, the RGV Sector CONOP included an "execution timeline" proposing a "phased approach" to increase the number of prosecution referrals over time, from approximately ██ per day as of May 7, 2018, to approximately ██ or more per day as of September 3, 2018.

73. Because 100% prosecution referrals were not immediately achievable in RGV Sector due to resource limitations, ███, the RGV Sector CONOP established prosecution referral priorities in the following order: ███

74. On May 27, 2018, DHS's Executive Director of Policy and Planning Meghann K. Peterlin, sent an email to other high-level officials stating that data on family separations went only as far back as 2017. In that email, Peterlin stated, "[W]e didn't and don't have a policy of separation. Previously, if we separated, it was specifically and only for safety and welfare of the child (██ – was there a specific criminal threshold too?)."

75. In response, Senior Advisor to the CBP Commissioner ███ stated, "we could also separate if the adult was a prior deport and then we would charge for 1326 (separated for Criminal History); separated for child danger; for medical reasons, etc….however none of this

was captured in the system prior to April 19th [2018] when we started capturing family separation."

76. On May 30, 2018, USBP Executive Officer for the RGV Sector Monique Grame sent an email attaching a "FMUA Separation Card sheet" and directing that a copy be provided "to each parent separated from their child due to a 1325 prosecution." The email ended with: "█████████████████████████████████████████████████████████████████████████████████████████."

77. On June 20, 2018, former President Trump signed an executive order titled "Affording Congress an Opportunity to Address Family Separation," ending the Zero Tolerance Policy. E.O. 13841.

78. If an apprehended family unit with a minor child has two parents and only one parent is referred for prosecution, the child remains with the non-prosecuted parent and does not become a UAC unless there are other reasons warranting a separation of the minor child from the non-prosecuted parent as well.

V. **The *Ms. L.* Litigation**

79. On February 26, 2018, on behalf of a mother known as Ms. L., the American Civil Liberties Union filed a habeas corpus petition and complaint for declaratory and injunctive relief in the federal district court of the Southern District of California. The petition and complaint alleged that Ms. L and her child had been separated by CBP on or about November 5, 2017. *Ms. L. v. U.S. Immigration & Customs Enforcement et al.*, 18-cv-428 (DMS) (MDD) (S.D. Cal.), ECF No. 1, ¶¶ 40-42.

80. Ms. L. had presented at the San Ysidro Port of Entry (POE), located near San Diego, on November 1, 2017. *Ms. L.*, ECF No. 1, ¶ 40.

14

81. On March 9, 2018, the ACLU filed an amended complaint, adding class action allegations as well as another named plaintiff. *Ms. L.*, ECF No. 32, ¶ 57.

82. On June 26, 2018, a federal district court in the Southern District of California certified a class of individuals under Federal Rule of Civil Procedure 23(b)(2) consisting of: "All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the [DHS], and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody absent a determination that the parent is unfit or presents a danger to the child." *Ms. L., et al. v. U.S. Immigration and Customs Enforcement, et al.*, 18-cv-428 (DMS) (MDD) (S.D. Cal.), ECF No. 82. The class did not include "parents with criminal history." *Id.*; *Ms. L.*, 310 F. Supp. 3d 1133, 1139 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019).

83. On June 26, 2018, the *Ms. L.* Court preliminarily enjoined ICE from detaining class members apart from their minor children "absent a determination that the parent is unfit or presents a danger to the child, unless the parent affirmatively, knowingly, and voluntarily declines to be reunited with the child in DHS custody." *Id.* at 1149.

84. On June 26, 2018, the *Ms. L.* Court also ordered Defendants to reunify class members (1) with minor children under 5 within 14 days of the order, and (2) with minor children 5 and over within 30 days of the order (by July 26, 2018). *Id.* at 1149.

85. Following the June 26, 2018, *Ms. L.* decision, ICE released hundreds of detained individuals and coordinated with HHS, as well as a steering committee of pro bono volunteers and non-governmental organizations, to reunify them with their minor children. *Ms. L.*, ECF No. 456 at 2 n.3.

86. In August 2018, the government determined that G.C. was not a member of the *Ms. L.* class and that it would not release him as part of the *Ms. L.* reunification process due to his criminal history. Compl. ¶ 113; *Ms. L.*, ECF No. 222 at 6.

87. On September 13, 2018, plaintiffs in *Ms. L.* specifically requested that the court in that case order the immediate reunification of G.C. with D.J.C.V. *Ms. L.*, 18-cv-428, ECF No. 221.

88. On September 19, 2018, the court denied the request for an order directing reunification of G.C. and D.J.C.V. *Id.*, ECF No. 236.